UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| EDWARD C. HUGLER, Acting Secretary of Labor,[1] <br>     Plaintiff, <br><br> v. <br><br> AMALGAMATED TRANSIT UNION LOCAL 1700, <br>     Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) | Civil Action No. 14-1268 (APM) |

## DECLARATION OF SHARON HANLEY

    I, Sharon Hanley, am the Chief of the Division of Enforcement, Office of Labor-Management Standards ("OLMS"), United States Department of Labor ("the Department"). The Department supervised an election of officers of Amalgamated Transit Union Local 1700, ("Defendant" or "Local 1700"), which was completed on December 1, 2016, pursuant to a Stipulation and Order of Settlement entered April 7, 2016, by this Court ("the supervised election"). Pursuant to the Stipulation and Order, the supervised election included new elections for the positions of President and Alternate Delegate. By agreement of the parties, the Department also supervised the election as to the other positions that were to be filled concurrently.

    On August 12, 2016, OLMS mailed letters to all officers, election committee members, candidates that ran for office in the 2013 election, and Local 1700's attorneys, inviting them to

---

[1] Initially, this action was commenced in the name of Thomas E. Perez, Secretary of Labor. On January 20, 2017, Secretary Perez ceased to hold that office. Edward Hugler is the Acting Secretary of Labor. Therefore, Mr. Hugler is being automatically substituted for Mr. Perez as the Plaintiff, pursuant to Fed. R. Civ. P. 25(d), and the caption of this action is amended accordingly.

attend a pre-election conference. The pre-election conference was held at the Sam Nunn Atlanta Federal Center on August 23, 2016,[2] and parties participated in-person and via teleconference. The purpose of the conference, which was open to all interested parties, was to develop election rules and procedures and to establish timeframes to be used in conducting the election. There were 28 attendees at the pre-election conference, including two OLMS representatives. OLMS mailed a copy of the rules established at the pre-election conference to all invitees on September 16, 2016.

OLMS worked with Local 1700 to take several steps to update the addresses on its membership lists, including by posting a notice soliciting updated addresses on the Local 1700 website and in the Local 1700 newsletter. OLMS verified any address updates after they were inputted by Local 1700 personnel prior to any election mailings.

A third-party vendor printed and mailed the Notice of Nominations and Election, observed by OLMS and counsel for Local 1700, after running the updated mailing list through a National Change of Address ("NCOA") database and correcting any discrepancies or errors that revealed. The Notice provided information about nominations, when ballots would be mailed, when voted ballots were due to be returned, and how to obtain duplicate/replacement ballots. These Notices were mailed to 2,513 members' updated addresses and posted on Local 1700's website on Monday, September 19, 2016, and posted at Greyhound jobsites on or around September 20, 2016. 130 Notices were returned to Local 1700 as undeliverable, and each was investigated. 32 of these members were determined to be deceased, and five had been terminated and thus were ineligible to vote. OLMS personally conducted searches for updated addresses for the remaining 93 individuals whose notices were returned as undeliverable, using the CLEAR system, a

---

[2] While this litigation was ongoing, Local 1700 moved its offices from Washington, D.C., to Norcross, Georgia.

commercial database, used by law enforcement agencies, that compiles address and telephone information. They successfully obtained updated address information for all but one of the 93 members. Notices were re-mailed to 92 members, and these updated addresses were used for the remainder of the election.

The Notice allowed nominations to be made either in person at an October 11, 2016 meeting in Norcross, Georgia, or submitted in writing in advance of that meeting. Written nominations were required to be submitted to the OLMS election supervisor or the Local 1700 Financial Secretary-Treasurer by October 8, 2016 at 12:00 noon, and were accepted by mail or fax. Self-nominations were allowed and no seconds were required. A total of 51 members were nominated for office, and some members were nominated for multiple offices. The Local 1700 Election Committee, in coordination with the Financial Secretary-Treasurer, determined candidate eligibility for each nominee, and OLMS verified its determinations. Nominees were given until October 27, 2016 to accept or decline their nomination. A total of 38 candidates accepted nomination for 13 positions.

On November 4, 2016, OLMS and Local 1700 attorneys prepared ballots to be printed by a third-party. OLMS transported the 2,459 ballots to a mailing house that same day. The mailing house stuffed and addressed the ballot packages, after again running the addresses through an NCOA database and correcting errors. On November 7, 2016, an OLMS employee and a Local 1700 attorney transported the ballot packages to the post office for mailing.

OLMS and the Local 1700 Financial Secretary-Treasurer regularly checked the post office box for returned undeliverable ballot packages. Only 25 ballot packages were returned as undeliverable. Upon receipt, OLMS employees promptly used the CLEAR system to obtain updated addresses for all 25 members whose ballots were returned as undeliverable, and ballots

were remailed on a rolling basis.  In addition, 63 members requested duplicate/replacement ballots, which were also mailed on a rolling basis.

Ballots were due to a post office box in Norcross, Georgia, on December 1, 2016 at 11:00am. A total of 749 returned ballots were collected at that time, and counted immediately following their retrieval from the post office.

The election rules provided for a 10-day period for election protests.  Since the 10th day fell on a Sunday, the last day protests were accepted was Monday, December 12, 2016. OLMS received five written complaints within the protest period. The substance of the allegations in the protests is summarized below, followed by the Department's resolution of each allegation.

James Randolph's Undated Protest Received December 9, 2016

Allegation: Mr. Randolph alleged that Local 1700 failed to take sufficient steps to keep its database of mailing addresses updated.

Response:  As noted by this Court, Section 401(e) of the LMRDA, 29 U.S.C. § 481(e), requires that "reasonable steps" be taken to "ensure that each member in good standing is given a fair opportunity to vote."  Dkt. No. 27 at 11.  Mr. Randolph's conclusion that Local 1700 had insufficiently updated mailing addresses appears to be primarily based on the fact that "over 80" pieces of his campaign literature, which was sent using Local 1700's mailing list, were returned as undeliverable.  But the mere fact that some pieces were returned undeliverable does not establish anyone was denied a fair opportunity to vote.  While Mr. Randolph also relies on language from the Court's opinion in this case, relating to the mailing list update process for the challenged 2013 election, numerous additional steps were taken in the supervised election to ensure that members received ballots.  These steps included verified updates of the list before the mailing of Notices, an NCOA database run prior to the mailing of Notices, CLEAR searches in

4

response to any notices returned as undeliverable (with the results used to update the list for mailing ballots), and an additional NCOA run prior to the mailing of ballots.  These steps were successful.  Whereas in the 2013 challenged election, 168 ballots were returned as undeliverable, only 25 of 2,459 ballots were returned as undeliverable in the supervised election – and updated addresses were identified for each of these 25 members and used to remail ballots.[3]  The process by which members were mailed ballots complied with the duty to take reasonable steps to ensure a fair opportunity to vote.

Johnny B. Norris's undated post-election protest received December 5, 2016

Allegation:  Mr. Norris alleged that ballots were not mailed far enough in advance to provide sufficient time for members to receive, complete, and return them, in time to make the December 1, 2016 deadline.

Response: Local 1700's bylaws provide that ballots are to be mailed on or before November 10th, and the final day of voting will be on or about December 1st.  Article X, Section 8.  OLMS witnessed the mailing of the ballots on November 7th, with a return date of December 1st, thus providing 24 days -- more time than required by the Local 1700 bylaws.  Combined with the fact that the earlier Notice provided members with information on how to obtain duplicate ballots, this 24-day period was reasonable and did not deny members a fair opportunity to vote. *Compare with*  29 C.F.R. § 452.102 (OLMS's interpretative regulations) (where separate notice has *not* been mailed to members, ballots must be mailed "no later than fifteen days prior to the date when they must be mailed back in order to be counted"); 29 U.S.C. § 481(e) (notice of election shall be mailed not less than 15 days prior to the election).

---

[3] This includes the two members who Mr. Randolph referenced by name, one of whom returned a completed ballot in the election.

Allegation: Mr. Norris alleged that members who requested replacement ballots did not receive them with enough time to return them.

Response: OLMS mailed out 63 replacement ballots to members who requested them. All such ballots were mailed out within two days of the request. These constituted reasonable steps to ensure a fair opportunity to vote. While Mr. Norris provided OLMS investigators with the names of three members who purportedly did not receive replacement ballots in time to return them, one of those members did not request a replacement ballot, and the other two successfully returned their voted replacement ballots on time.

Sabreana Hamm's Undated Protest Received December 6, 2016

Allegation: Ms. Hamm alleged that ballots were not mailed to provide sufficient time for members to receive, complete, and return them, in time to make the December 1, 2016 deadline.

Response: As noted in response to Mr. Norris's protest, the mailing schedule for the ballots was consistent with Local 1700's bylaws and was reasonable.

Sandra Frye's Undated Protest Received December 6, 2016

Allegation: Ms. Frye alleged that ballots were not received by members on time or at all.

Response: As noted in response to Mr. Norris's protest, the mailing schedule for the ballots was consistent with Local 1700's bylaws and was reasonable.

As to Ms. Frye's complaint that members did not receive ballots at all, the process by which Local 1700 and OLMS updated addresses prior to mailing, and identified updated addresses for every ballot returned as undeliverable, as discussed above with respect to Mr. Randolph's complaint, was reasonable. Ms. Frye identified six members who she claims did not receive a ballot. One, Angelo Spaziani, is addressed separately below. Two of the six confirmed to OLMS that they did receive ballots and voted. Another told OLMS investigators that he

received a ballot package, but that it was defective, and he did not contact Local 1700 or the Election Supervisor to obtain a new one. The final two did not respond to contacts from OLMS investigators, and OLMS records reflect that they were mailed ballots to their most current addresses. Their ballots were not returned as undeliverable, and no more current address has been identified. There is no evidence of a failure to take reasonable steps to ensure a fair opportunity to vote.

Angelo Spaziani's Undated Protest Received December 6, 2016

Allegation: Mr. Spaziani's written protest alleged that his original ballot arrived late, after he had requested a replacement ballot, and he did not know if he returned it with sufficient time for his ballot to be counted.

Response: In a conversation with OLMS investigators, Mr. Spaziani stated that he did not receive a ballot nor did he request a replacement ballot. OLMS maintained a record of all replacement ballot requests. The election records confirmed that Mr. Spaziani never requested nor was he sent a replacement ballot. OLMS's investigation revealed that Mr. Spaziani did not receive a ballot as a result of an administrative error related to his unique situation, having converted from retiree to active status in late July 2016, shortly before the mailing lists were prepared. While this was an error, there was no indication that this error was the result of a failure to take reasonable steps to ensure the accuracy of the mailing lists. Moreover, had Mr. Spaziani requested a replacement ballot, he would have been mailed one. Mr. Spaziani provided OLMS with conflicting information as to whether he knew how to request a replacement ballot, having stated in his complaint that he requested one, but later stating to the investigators that he had been unaware of the election at all. Accordingly, there is no evidence of a denial of a reasonable opportunity to vote.

The Department has concluded from its investigation that Local 1700's December 1, 2016 election of officers, conducted under the Department's supervision, complied with Title IV of the Act and was conducted, insofar as lawful and practicable, in accordance with Local 1700's Bylaws, the International Constitution and the Act. Therefore, no reason exists to overturn the results of this supervised election.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 17th day of February 2017, in the City of Washington, District of Columbia.

Sharon Hanley, Chief
Division of Enforcement,
Office of Labor-Management Standards,
United States Department of Labor